## POWERS *v.* COMLY.

Opium, the product of Persia, imported to the United States from a country west of the Cape of Good Hope, is subject to the additional duty of ten per cent *ad valorem* imposed by the third section of the act of June 6, 1872. 17 Stat. 232; Rev. Stat., sect. 2501.

2. That act is not in conflict with the treaty between the United States and Persia. 11 Stat. 709.

ERROR to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This suit was brought by Powers & Weightman, of Philadelphia, against the collector of that port to recover the additional duty of ten per cent *ad valorem,* exacted by him under the third

section of the act of June 6, 1872 (17 Stat. 232; Rev. Stat., sect. 2501), upon certain opium imported by them in 1874 from Liverpool, it having previously been exported from Persia to England, by way of the Isthmus of Suéz and the Mediterranean. That section is as follows : —

"That on and after the first day of October next, there shall be collected and paid on all goods, wares, and merchandise of the growth or produce of countries east of the Cape of Good Hope (except wool, raw cotton, and raw silk as reeled from the cocoon, or not further advanced than tram, thrown, or organzine), when imported from places west of the Cape of Good Hope, a duty of ten per cent *ad valorem,* in addition to the duties imposed on any such article when imported directly from the place or places of their growth or production."

Judgment was rendered for the defendant. The plaintiffs sued out this writ.

*Mr. Henry Flanders* for the plaintiffs in error.
*The Solicitor-General, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This case is substantially disposed of by *Hadden* v. *The Collector* (5 Wall. 107) and *Sturges* v. *The Collector,* 12 id. 19. Sect. 3 of the act of June 6, 1872 (17 Stat. 232), is in all material respects like the statutes under consideration in those cases where we held that countries " beyond the Cape of Good Hope" and countries " east of the Cape of Good Hope" meant countries with which, at that time, the United States ordinarily carried on commercial intercourse by passing around that cape. Although the act of 1872 was passed after the Suez Canal was in operation, we see no indication of an intention by Congress to give a new meaning to the language employed which had already received a judicial construction. The words used are words of description, and indicate to the popular mind the same countries now that they did before the course of trade was to some extent changed by cutting through the Isthmus of Suez. The object of Congress was to encourage a direct trade with these Eastern countries. For this purpose,

in legal effect, a bounty was offered to those who imported the products of that region directly from the countries themselves, instead of from places west of the Cape.

We see nothing in the act of Congress which is in conflict with the treaty with Persia. 11 Stat. 709. If the subjects of Persia export their products directly to the United States, they are required to pay no more duties here than the " merchants and subjects of the most favored nation." It is only when their products are first exported to some place west of the Cape, and from there exported to the United States, that the additional duty is imposed. Under such circumstances, the importation into the United States is not, commercially speaking, from Persia, but from the last place of exportation.

*Judgment affirmed.*